IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

**ARTHUR MCMAHON**, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

**BRECKENRIDGE GRAND VACATIONS, LLC d/b/a PEAK 8 PROPERTIES, LLC**, a Colorado limited liability company,

    Defendant.

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Arthur McMahon ("McMahon" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendants Breckenridge Grand Vacations, LLC d/b/a Peak 8 Properties, LLC, ("BGV" or "Peak 8" or "Defendant") to (1) challenge Defendant's practice of improperly classifying its sales personnel as independent contractors, (2) recover overtime wages and benefits to Plaintiff and Class for time worked while employed, and (3) enjoin Defendant from misclassifying salespersons as independent contractors going forward. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### NATURE OF THE ACTION

1. Defendant BGV is a Colorado limited liability company that engages in the practice of renting and selling timeshare-based real estate.

2. Defendant BGV does business under the name of four entities. These entities are

Gold Point Resort, Grand Timber Lodge, the Grand Lodge on Peak 7, and the Grand Colorado on Peak 8.

3. To drive sales, Defendants hire salespersons to pitch and sell timeshares in Summit County, Colorado.

4. Unfortunately for Plaintiff and the alleged Class, Defendant improperly categorizes their salespersons as independent contractors in violation of the Fair Labor Standards Act (FLSA).

5. The Defendant has violated the FLSA willfully and unfairly by categorizing their salespersons as independent contractors, thus not having to pay them overtime wages, benefits, and reaping the company tax benefits.

6. The Supreme Court has directed that the economic realities of the relationship between employer and worker dictates the status of the employee, with the focal point being, "whether the individual is economically dependent on the business to which he renders service, or is, as a matter of economic fact, in business for himself." *Bartles v. Birmingham,* 332 U.S. 126, 67 S.Ct. 1547, 1549 (1947).

7. The FLSA requires that employees meet a clear balancing test to determine whether an employee is an employee or an independent contractor. The tests includes: (1) the extent to which the services rendered are an integral part of the principal's business; (2) permanency of the relationship; (3) amount of the alleged contractor's investment in facilities and equipment; (4) nature and degree of control by the principal; (5) alleged contractor's opportunities for profit and loss; (6) the amount of initiative, judgment, or foresight in open market competition with others required for the success of the claimed independent contractor; and (7) the degree of independent business organization and operation.

8. Additionally, Defendant has willfully violated the Colorado Wage Act ("CWA") by unfairly categorizing their salespersons as independent contractors.

9. Under Colorado law a worker is presumed an employee until there is, "evidence that such individual is engaged in an independent trade, occupation, profession, or business and is free from control and direction in the performance of the service…" Colorado Revised Statute § 8-70-115(c).

10. The same Colorado statute provides a set of factors to be considered when determining whether a worker is in fact an employee or independent contractor:

   a. Require the individual to work exclusively for the person for whom services are performed; except that the individual may choose to work exclusively for the said person for a finite period of time specified in the document;

   b. Establish a quality standard for the individual; except that such person can provide plans and specifications regarding the work but cannot oversee the actual work or instruct the individual as to how the work will be performed;

   c. Pay a salary or hourly rate but rather a fixed or contract rate;

   d. Terminate the work during the contract period unless the individual violates the terms of the contract or fails to produce a result that meets the specifications of the contract;

   e. Provide more than minimal training for the individual;

   f. Provide tools or benefits to the individual; except that materials and equipment may be supplied;

   g. Dictate the time of performance; except that completion schedule and range of mutually agreeable work hours may be established;

   h. Pay the individual personally but rather makes checks payable to the trade or business name of the individual; and

   i. Combine his business operations in any way with the individual's business, but instead maintains such operations as separate and distinct.

CO. Rev. Stat. § 8-70-115(c)

11. Defendant has deprived Plaintiff and Plaintiff Class of actual wages, overtime wages, and benefits by willfully misclassifying them as independent contractors in lieu of regular employees as the FLSA and Colorado Wage Act would require.

12. By willfully misclassifying the Plaintiff and Plaintiff Class as independent contractors, the Defendant has purposefully and successfully gone without paying the rightful amount of employment taxes owed to Internal Revenue Service and Colorado State Government.

13. The FLSA and CWA were enacted to protect employees from the abuses of long workhours, incorrect pay, and needed benefits. In response to Defendant's unlawful conduct, Plaintiff brings this action seeking injunctive relief, requiring Defendant to correctly classify their employees, as well as an award of damages stipulated by the FLSA and CWA that would be the equivalent to two years of owed overtime backpay (three if proven to be willful), together with costs, and reasonable attorneys' fees.

## PARTIES

14. Plaintiff Art McMahon is a natural person and resident of Breckenridge, Colorado.

15. Defendant Breckenridge Grand Vacations, LLC, is a Colorado limited liability company, and is the parent company of Peak 8 Properties, LLC, which is located and headquartered at 100 S. Main St., Breckenridge, Colorado 80424. On information and belief, officers and directors exert operational control over their timeshare salespeople, control business strategy, daily operations, office and office settings, sales goals, and advertising requirements.

## JURISDICTION AND VENUE

16. The Court has subject matter jurisdiction over this action pursuant to the Fair

Labor Standards Act (FLSA), 29 U.S.C. §216 *et seq*, a federal statute. The Court also has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA").

17. This Court has supplemental subject-matter jurisdiction over the ancillary and pendent state law claim under 28 U.S.C. § 1367.

18. The Court has personal jurisdiction over BGV because, on information and belief, it is headquartered and licensed within the District of Colorado.

19. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as the Defendant resides in the District of Colorado.

## COMMON FACTUAL ALLEGATIONS

20. Defendant is a company that is engages and has the primary business model of selling and renting timeshare real estate within Summit County, Colorado.

21. Defendant hires "sales brokers" on contract basis as alleged "independent contractors" to perform tasks and sales directed as Defendant instructs.

22. Defendant requires "sales brokers" to create and form their own entity to do business for Defendant, and require the entity to be formed prior to sales beginning. This can be seen within the Office Policy Manual for Peak 8 Properties, LLC, Page 6, Subsection D.

23. Defendant has their "sales brokers" sign contracts that inform the sales brokers they are working as independent contractors, despite their treatment of sales brokers as employees under the definition and tests determined by the FLSA.

24. Defendant requires their sales people to rent an office space from them for $200/month, and sends out an office manual to all of their "employees" which includes their "independent contractors".

25. Defendant sets and creates the schedules for their salespersons, generates and

provides leads for the salespersons, determines what sales pitches and advertisements are appropriate, dictates what salespersons can wear, set requirements for meeting length with potential clients, and when they can leave the office. All of this is evidence of the control that is exerted by the Defendant over their independent contractors, proving the lack of control the independent contractors have over their work.

26. Defendant is by definition, under the FLSA, an enterprise which owes a duty to employees in the form of wages, overtime, and benefits. The FLSA defines an enterprise as (1) a business whose annual dollar volume of sales or business done is at least $500,000; or (2) hospitals, businesses providing medical or nursing car for residents, schools and preschools, and government agencies. In the alternative, companies who are not labeled enterprises may still be liable to cover their employees if they engage in interstate commerce. The Defendant has engaged in interstate commerce when its primary method and business goal is to sell stake in timeshared real estate to clients across the United States. Additionally, the Defendant has done over $500,000 annually in sales.

27. The Defendant has used the company required construction of the independent contractor entity as a salesperson scheme that purposefully deprives employees of proper wages and benefits that are guaranteed to them by the FLSA, as well as, depriving the Internal Revenue Service and Colorado State government of their owed taxes.

### FACTS SPECIFIC TO PLAINTIFF MCMAHON

28. Plaintiff began working for BGV in or around the end of the year in 1997. As part of the hiring process, BGV required Plaintiff to license and create his own entity so they could purposefully misclassify Plaintiff as an independent contractor.

29. On February 15, 2008, BGV required Plaintiff to change his payroll status with

the company. Plaintiff's name was listed instead of the Plaintiff's entity that Defendant had required for payment.

30.     On September 18, 2010, BGV d/b/a Peak 7, LLC required Plaintiff to sign a "Declaration of Independent Contractor Status Form". This form holds nine criteria that Defendant states the business will not provide/supply; however, this is contrary to their actual business's practice.

31.     Within Declaration of Independent Contractor Status Form's nine criteria includes: (1) the business DOES NOT establish a quality standard for the individual; (2) the business DOES NOT pay the individual personally instead of making payment or checks payable to the trade or business name of the individual; and (3) the business DOES NOT dictate the time of performance. The Plaintiff contends that the Defendant does in fact and in practice, require all of these practices in order to successfully work for the Defendant's business.

32.     On December 5, 2010, Breckenridge Grand Vacations supplied Plaintiff's "independent entity" with a paycheck.

33.     On October 16, 2011, Defendant supplied Plaintiff with a Notice of Performance ("NOP") which was reprimanding several aspects of his performance. Initially the NOP discusses the Plaintiff's superior sales record in winter months then the corresponding sales record's for the spring and summer sales. The NOP continues to set forth rules and regulations for Plaintiff to comply with, these rules include: (1) mandatory repairment of relationships within the work place, (2) explicit explanation of Plaintiff's role within the business, (3) Defendant's requirement of adaptation of presentation for sales, (4) Defendant's requirement to become more coachable and willing to take corrective actions by Defendant's managers when necessary, and (5) requirement for improvement of sales.

34. On April 3, 2013, Plaintiff received an Interoffice Memorandum from Michael C. Millisor, President, regarding Plaintiff's absence from required Great Vacation Training Sessions. The Interoffice Memorandum states that the Defendant Company has a strict policy on mandatory attendance to one training session per month, and states these are a requirement for continued employment by Defendant BGV. Defendant docked Plaintiff $100 from a paycheck for failure to attend the mandatory meeting, and lost privileges to Defendant's company tickets to sporting and cultural events for a 6 month period.

35. On Sunday, April 3, 2016 at 10:30 AM, Defendant had David McEnery contact Plaintiff about confirming his individual entity status and establishing his company.

36. On Monday, May 30, 2016 at 7:24 PM, Defendant had Dave Stroeve contact Plaintiff about new independent contractor and office polices and requested Plaintiff's signature on both documents. Additionally, Dave Stroeve said he would be attending Plaintiff's meetings during the week. This agreement and office policy are attached hereto as Exhibits A and B.

37. On Sunday, July 2, 2017, at 3:50 PM, John Liner emailed Plaintiff stating that it was the annual updated independent contractor agreement and office policy manual. John Liner requested signature on both of these.

38. On Tuesday, October 22, 2019 at 3:23 PM, John Liner emailed Plaintiff notifying him of his immediate termination.

39. Throughout Plaintiff's employment he was required to stay onsite, working, for shifts that lasted from 8:30AM until 6:00PM, sometimes until 9:00PM.

40. On Friday, December 6, 2019, Chief Operating Officer Nick Doran furnished a general release and waiver of claims to Plaintiff. The general release and waiver of claims provides the Defendant will pay a lump sum of $20,000 that is currently and already owed to the

Plaintiff in advance.

41. Within the general release and waiver, Defendant BGV requests release and waiver from Plaintiff for the following statutes: Age Discrimination Act in Employment Act, Worker Adjustment and Retraining Notification Act, Colorado Anti-Discrimination Act, Civil Rights Act of 1964, Americans with Disabilities Act, Executive Order 11246, Civil Rights Act of 1866, the National Labor Relations Act, the Contractor Retirement Income Security Act, Sarbanes-Oxley Act of 2002, and any and all other municipal, state, and/or federal statutory, executive order, or constitutional provisions pertaining to the relationship between Contractor and BGV, regardless of the characterization of that relationship.

42. Evidenced by the aforementioned document in paragraphs 37 and 38, the Defendant is attempting to obtain a signature from the Plaintiff for release and waiver of claims by promising to provide the $20,000 of owed, yet withheld compensation.

43. For all times during his employment and relationship with Defendant, Plaintiff was required to adhere to their strict schedule policies, meeting policies, dress code, stay onsite for sales, use their required and assigned clients and property listings, adhere to their sales practices, comply with mandatory trainings and annual goals, and required separate entity formation.

## CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule (b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Class:

> **Misclassification Employee Class:** All persons in the United States who, from two years prior to the filing of the instant action until the date notice is disseminated, (1) were employed by Defendant for a sales position, (2) were classified as an independent contractor, and (3) did not receive overtime wages and benefits.

45. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definitions following appropriate discovery.

46. **Numerosity**: The exact size of the Class unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant willfully misclassified previous and current employees as independent contractors within this Class. Members of the Class can be easily identified through Defendant's employment records.

47. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    a. Whether Defendant's conduct constitutes a violation of the FLSA;

    b. Whether Defendant's conduct was a willful violation of the FLSA; and

    c. Whether Defendant's conduct was a willful avoidance of classifying employees as independent contracts for the purpose of avoiding tax and benefit liabilities.

48. **Adequate Representation**: This class action is also appropriate for certification

because Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**FIRST CLAIM FOR RELIEF**
Overtime Pay Under Fair Labor Standards Act
29 U.S.C. § 201 *et. seq.*

49. The allegations in paragraphs 17 through 44 above are re-alleged and incorporated by reference.

50. Defendant BGV was at all relevant times the employer, within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA"), and engaged in the business of selling timeshare real estate.

51. Plaintiff was employed by Defendant BGV d/b/a Peak 8 Properties, LLC, from approximately 1997 until October 22, 2019.

52. Plaintiff entered into a contract of employment with Defendant from approximately 1997 until each individual updated contract was presented to continue working.

53. Plaintiff frequently worked in excess of 40 hours per week.

54. Defendant BGV suffered and permitted such overtime work to be performed by Plaintiff and Plaintiff Class.

55. During his twenty-two years of employment, Plaintiff was never paid on a time-and-a-half basis for overtime work, as required by the FLSA and regulations promulgated there under by the Secretary of Labor.

56. Defendant also did not pay members of the class overtime and benefits, in violation of the FLSA.

57. Plaintiff is entitled, by virtue of Defendant's violations of the FLSA, to recover unpaid overtime wages owed to him for hours he worked in excess of forty hours per week without receiving overtime.

58. Plaintiff is also entitled to recover from Defendant an additional amount as liquidated damages, reasonable attorney's fees, costs, and interest, all as contemplated by 29 U.S.C. §216(b) of the FLSA.

**SECOND CLAIM FOR RELIEF**
Unpaid Overtime Wages to Employees
CO. Rev. Stat. § 8-4-109 *et. seq.*

59. The allegations in paragraphs 17 through 44 above are re-alleged and incorporated by reference.

60. Defendant BGV was at all relevant times the employer, within the meaning of the Colorado Wage Act § 8-4-101 *et. seq.* ("CWA"), and engaged in the business of selling timeshare real estate.

61. Plaintiff and the members of the alleged Class were employed by Defendant BGV d/b/a Peak 8 Properties, LLC, from approximately 1997 until October 22, 2019.

62. Plaintiff entered into a contract of employment with Defendant from approximately 1997 until each individual updated contract was presented to continue working.

63. Plaintiff frequently worked in excess of 40 hours per week.

64. Defendant BGV suffered and permitted such overtime work to be performed by Plaintiff and the Class.

65. During his twenty-two years of employment, Plaintiff was never paid on a time-and-a-half basis for overtime work, as required by the Colorado Wage Act.

66. Plaintiff and the Class are entitled, by virtue of Defendant's violations of the CWA, to recover unpaid overtime wages owed to him for hours he worked in excess of forty hours per week without receiving overtime.

67. Plaintiff is also entitled to recover from Defendant an additional amount as liquidated damages, reasonable attorney's fees, costs, and interest, all as contemplated by CO. Rev. Stat. § 8-4-109 *et. seq.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Art McMahon, individually and on behalf of the Class, prays for the following relief:

1. An order certifying the Class as defined above, appointing Plaintiff Art McMahon as the representative of the Class, and appointing his counsel as Class Counsel;

2. An award of actual monetary loss from such violations; and the additional liquidated damages that are allowed under the FLSA. The gross total of which will be paid into a common fund for the benefit of the Plaintiff and Class Members;

3. Extended lookback period, in accordance with the FLSA, with damages and liquidated damages in case the willful and knowing violations are proven;

4. An injunction requiring Defendant to cease all misclassification of current and future employees as independent contractors;

5. An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above;

6. An award of pre- and post-judgment interest;

7. Such other further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff request a trial by jury of all claims that can be tried.

Respectfully Submitted,

**ART MCMAHON**, individually and on behalf of a Class of similarly situated individuals

Dated: March 18, 2020       By: _____/s/ Patrick H. Peluso_____
                                   One of Plaintiff's Attorneys

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, Colorado 80210
Tel: 720-213-0675
Fax: 303-927-0809

*Attorneys for Plaintiff and the Class*