IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00754-CMA-STV

**ARTHUR MCMAHON**,

 Plaintiff,

v.

**BRECKENRIDGE GRAND VACATIONS, LLC,**
**d/b/a PEAK 8 PROPERTIES, LLC a Colorado**
**limited liability company,**

 Defendant.

## DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS OF PUTATIVE OPT-IN PLAINTIFF MR. JEFF MEYER

Defendant Peak 8 Properties, LLC d/b/a Breckenridge Grand Vacations, LLC ("BGV"), by and through counsel, hereby moves to compel arbitration and dismiss the claims asserted by Opt-In Plaintiff Mr. Jeff Meyer ("Mr. Meyer") in the above captioned action pursuant to Fed. R. Civ. P. 12(b)(1) and the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (the "FAA"). In support of this motion, BGV states as follows:

### CERTIFICATION PURSUANT TO D.C.COLO.LCivR 7.1(a)

Pursuant to D.C.COLO.LCivR 7.1(a) and CMA Civ. Practice Standard 7.1D(a), undersigned counsel conferred with counsel for Mr. Meyer regarding the relief requested in this motion. Mr. Meyer opposes the motion.

## I. INTRODUCTION

The Court should compel Mr. Meyer to pursue his claims against BGV in arbitration and dismiss his claims pursuant to Fed. R. Civ. P. 12(b)(1). BGV originally contracted with Mr. Meyer on June 2, 2016, to provide services as an Independent Contractor for the Company. On June 12, 2020, Mr. Meyer signed a new Independent Sales Contractor Agreement (the "Agreement"), containing a mutual provision related to mandatory and exclusive arbitration under the American Arbitration Association's Commercial Rules for "any and all disputes" between the parties. Mr. Meyer signed the agreement and acknowledged his understanding and consent to the provisions in the agreement, including the mandatory and exclusive arbitration provision. Mr. Meyer opted into the instant lawsuit over seventeen months later, on January 10, 2022, alleging that BGV improperly classified him as an Independent Contractor and therefore failed to pay his overtime wages and other benefits. As discussed in more detail below, this Court, accordingly, should compel Mr. Meyer to pursue all of his claims against BGV in arbitration and dismiss his claims pursuant to Fed. R. Civ. P. 12(b)(1) and the FAA.

## II. RELEVANT BACKGROUND

### A. Background Information.

BGV is a limited liability company that develops, markets, sells, and operates four fractional ownership condominium resorts in Breckenridge, Colorado. Dkt. 15 ¶¶1, 20. BGV contracts with individuals and entities to provide real-estate brokerage services to clients seeking to purchase ownership units of these condominium resorts. Dkt. 24-4.

Plaintiff is an independent and licensed real estate broker, owner of Jeff Meyer

FP 43625388.1

Inc., and a former independent contractor of BGV in Colorado.  In June 2020, BGV provided Mr. Meyer with an Independent Sales Contractor Agreement in connection with his provision of independent services for BGV.  (*See* Exhibit 1, Declaration of John Liner Declaration ("Liner Decl."), ¶¶ 3-4, Ex. A). Mr. Meyer personally signed and entered into the agreement through his corporation, Jeff Meyer Inc. (*Id.*).

> **B.     Plaintiff and BGV Agreed to Arbitrate All Claims Asserted in the Complaint.**
>
> **1.  The parties agreed to arbitrate their claims against each other.**

The mandatory arbitration agreement Mr. Meyer signed states, in pertinent part, that both Mr. Meyer and BGV mutually agree that the <u>exclusive</u> mechanism for resolving "any and all claims" against each other shall be through final and binding arbitration:

> 16.    <u>Mandatory and Exclusive Arbitration</u>.  Contractor and Company mutually agree to resolve any disputes between them exclusively through final and binding arbitration instead of filing a lawsuit in court.  This arbitration clause shall apply to any and all claims arising out of this Agreement, the Contractor's provision of Services, and all other aspects of the Contractor's relationship with Company, past or present, including but not limited to claims for misclassification, unpaid commission, discrimination, harassment, retaliation, and all other federal, state and local statutory and common law claims.

(*Id.*, Ex. A).  The Agreement expressly states that it applies to the allegations contained in the Complaint.  Specifically, the Agreement delineates, by way of example and without limitation, some of the specific types of claims that fall within the scope, i.e., "claims for misclassification…and all other federal, state and local statutory and common law claims." (*Id.*)

Indeed, the Agreement contains only limited exceptions to its mandatory arbitration provision requiring that "any and all disputes" be arbitrated, none of which apply to the claim in the Complaint:

> (e)   Nothing herein is intended to or shall preclude Contractor from filing a complaint and/or charge with any appropriate federal, state or local government agency in its investigation.  Nonetheless, Contractor acknowledges that it shall not be entitled to receive any relief, recovery, or monies in connection with any complaint or charge brought against Company, without regard as to who brought said complaint or charge.

(*Id.*)

### 2.   The Agreement precludes Class and Collective Actions.

In addition to the preclusion of filing lawsuits in court, the Agreement also explicitly prohibits class actions in court or arbitration in Paragraph 16:

> (b)   <u>Class Action Waiver</u>.  Contractor agrees that by entering into this Agreement, Contractor waives its right to have any dispute brought, heard or arbitrated as a class action, collective action and/or representative action, and an arbitrator shall not have any authority to hear or arbitrate any class, collective or representative action.

(*Id.*)

### 3.   The Agreement provides a fair and reasonable forum within which to resolve Mr. Meyer's claim.

The Agreement does not deprive Mr. Meyer of any remedies that would be applicable to his claim in a court of law, but rather merely determines the forum in which his claim shall be resolved.  Nothing in the Agreement restricts the remedies that may be awarded by an arbitrator or the time frame for commencing arbitration.  (*Id.*, Ex. A.)  In short, the Agreement allows Mr. Meyer to assert in arbitration his claim contained in his

Complaint, in accordance with the statute of limitations applicable to those claims under federal law, with the prospect of obtaining any damages that he is entitled to under applicable law. (*Id.*)

### III.     ARGUMENT

**A.     Mr. Meyer Should Be Compelled to Arbitrate His Claims and These Claims Should Be Dismissed.**

**1.     Standard of Review**

BGV requests this Court to compel Mr. Meyer to arbitrate his claims and to dismiss these claims from this lawsuit pursuant to Fed. R. Civ. P. 12(b)(1) and the FAA. "A district court lacks subject matter jurisdiction over disputes that are covered by an arbitration agreement." *JaJack v. N.Y. Life Ins. Co.*, No. 20-cv-01590-MEH, 2020 WL 8269316, at *4 (D. Colo. Dec. 28, 2020) (citing *Hagerman v. United Transp. Union*, 281 F.3d 1189, 1195 (10th Cir. 2002)). "Therefore, dismissal under Rule 12(b)(1) is appropriate if there is a valid and enforceable arbitration clause." *Id.* (citing *Encore Prods., Inc. v. Promise Keepers*, 53 F. Supp. 2d 1101, 1111 (D. Colo. 1999)). "A Rule 12(b)(1) motion to dismiss 'must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction.'" *Id.* (citation omitted). "In determining whether an arbitration provision warrants dismissal under Rule 12(b)(1) for the lack of federal subject matter jurisdiction, the Court also may consider affidavits, documents, and other exhibits." *Id.* (citing *Morrison v. Colo. Permanente Med. Grp. PC*, 983 F. Supp. 937, 939 (D. Colo. 1997)).

FP 43625388.1

### 2. The Federal Arbitration Act.

The United States Supreme Court has firmly established that arbitration agreements, including those allegedly arising in the employment context (and, here, BGV asserts that the Agreement was entered into by Mr. Meyer, as owner of Jeff Meyer Inc., in his capacity as an independent and licensed real estate broker under the laws of Colorado and not as an employee) are subject to the FAA. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001). Any written agreement to arbitrate "evidencing a transaction involving commerce" is "valid, irrevocable, and enforceable" under the FAA, "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In other words, the FAA governs the enforceability of any arbitration agreement "involving commerce." *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). In addition, Sections 3 and 4 of the FAA govern a motion to compel arbitration whenever the arbitration agreement at issue "involves commerce." The Supreme Court has instructed that the term "involving commerce" is to be read as broadly as possible, meaning the FAA governs any arbitration agreement which affects commerce in any way. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-81 (1995).

BGV is a business providing services to the public, and the Agreement applies broadly to all legal disputes, including those asserted in the Complaint on behalf of Mr. Meyer. Accordingly, the FAA applies to BGV's and Mr. Meyer's mutual agreement to arbitrate claims because it constitutes a written agreement to arbitrate that affects

commerce. *See Prima Paint*, 388 U.S. at 401.

The FAA "'reflects an emphatic federal policy in favor of arbitral dispute resolution.'" *Marmet Health Care Center, Inc. v. Brown*, 565 U.S. 530, 533 (2012) (citation omitted); *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1514 (10th Cir. 1995) (citation omitted). Indeed, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3, 4).

Consistent with this strong federal policy in favor of arbitration, the Supreme Court and the Tenth Circuit favor enforcement of arbitration clauses, including in employment disputes. (though, as indicated above, BGV asserts that Mr. Meyer, an independent licensed real estate broker under the laws of Colorado, was properly classified as an independent contractor). *See e.g.*, *Epic Sys. Corp.*, 138 S. Ct. at 1626, 1632 (holding that FLSA "does *not* displace the Arbitration Act"); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union & its Local 13-857 v. Phillips 66 Co.*, 839 F.3d 1198, 1209 (10th Cir. 2016) (mandating arbitration of grievances under collective-bargaining agreement; *Perry v. Thomas*, 482 U.S. 483, 484, 488-89 (1987) (holding that state wage claim was subject to mandatory arbitration); *Armijo v. Prudential Ins. Co. of Amer.*, 72 F.3d 793, 797 (10th Cir. 1995) ("The Supreme Court has held that an employee can be required to arbitrate federal claims for employment discrimination if he or he has contracted to do so.").

Likewise, Colorado law favors the resolution of disputes through arbitration. *See Lane v. Urgitus*, 145 P.3d 672, 678 (Colo. 2006) (noting that arbitration is a "favored method of dispute resolution" in Colorado); *see also* Colo. Rev. Stat. § 13-22-206(1)("An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable").

Pursuant to well-settled federal and state policy favoring arbitration, arbitration agreements, including those allegedly governing employment relationships, must be enforced. *See Brownlee v. Lithia Motors, Inc.*, 49 F. Supp. 3d 875, 882 (D. Colo. 2014) (ordering the parties to proceed with arbitration after rejecting the plaintiff's argument that the Colorado Wage Claim Act's non-waiver provision required the Court to hear and decide the state-law claims); *Byerly v. Kirkpatrick Pettis Smith Polian, Inc.*, 996 P.2d 771, 773-74 (Colo. App. 2000) (concluding that plaintiff's claim under the Colorado Wage Claim Act was subject to compulsory arbitration); *Grohn v. Sisters of Charity Health Servs. Colorado*, 960 P.2d 722, 727 (Colo. App. 1998) (holding that plaintiff's employment claim was subject to binding arbitration pursuant to the FAA).

In determining whether a dispute is arbitrable, the court employs a two-part inquiry. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). The court first determines whether a valid agreement exists, and second whether the disputes fall within the scope of the agreement. *Id.* Once the Court determines that there is a valid arbitration agreement and that the specific dispute at issue falls within the substantive scope of that agreement, the Court must compel arbitration and its duties are at an end.

*Id.* at 649-50.

Any doubts about the scope of arbitrable issues are resolved in favor of arbitration, whether the issue involves the construction of the contract language or an allegation of waiver, delay, or similar defense to arbitrability.  *Moses H. Cone*, 460 U.S. at 24-25.  A party seeking invalidation of an arbitration agreement bears the burden of proving that the arbitration provision is invalid or does not encompass the claims at issue.  *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000) (citations omitted).  A party may rebut the presumption of validity only by raising generally applicable state-law contract defenses "such as fraud, duress, or unconscionability. . . ."  *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

Here, a valid agreement to arbitrate exists, there are no bases to overcome the validity of the contract, and Mr. Meyer's claims fall within the scope of the agreement.

### 3. Mr. Meyer agreed to arbitrate.

Under both federal and state law, the issue of whether parties agreed to arbitrate a particular dispute is an issue of state contract law. *See* Hardin *v. First Cash Financial Services, Inc.*, 465 F.3d 470, 475 (10th Cir. 2006) ("[C]ourts should apply ordinary state-law principles that govern the formation of contracts to determine whether a party has agreed to arbitrate a dispute.") (internal citations and quotation marks omitted); *see also Medina v. Sonic-Denver T, Inc.*, 252 P.3d 1216, 1219 (Colo. App. 2011) ("Interpretation of an arbitration agreement is generally a matter of state law.").

Under Colorado law, "a contract is formed when an offer is made and accepted, and the agreement is supported by consideration." *Marquardt v. Perry*, 200 P.3d 1126, 1129

(Colo. App. 2008) (internal citations omitted). Importantly, "a court may refuse to compel arbitration only upon a showing that there is no agreement to arbitrate or if the issue sought to be arbitrated is clearly beyond the scope of the arbitration provision." *Eychner v. Van Vleet*, 870 P.2d 486, 489 (Colo. App. 1993) (internal citations and quotation marks omitted).

### a. The Agreement covers the claims in the lawsuit.

There is no dispute that the Agreement covers the claims asserted in this case. Mr. Meyer's claims that he was not paid overtime wages fall squarely within the scope of the Arbitration Agreement. The Arbitration Agreement is broad, encompassing "claims for misclassification…and all other federal, state and local statutory and common law claims."  Ex. A at ¶ 16.  This language indicates that the arbitration provision is intended to be broad and to cover the claims at issue. *See GATX*, 171 F. Supp. 2d at 1163-64 (stating that an arbitration agreement phrased to include disputes " 'related to' ... an agreement constitutes a broad arbitration clause" and concluding that the plaintiff's claims were arbitrable because they were sufficiently connected to the employment relationship created by the agreement). Mr. Meyer's claims are brought under the FLSA and Colorado law, and they rest upon issues concerning his alleged misclassification as an independent contractor, rather than as an employee (which, BGV disputes). Accordingly, these claims fall squarely within the parties binding agreement to submit any and all claims to binding arbitration.

### b. The Agreement is supported by valid consideration.

The Agreement is supported by valid consideration. Mr. Meyer signed the Agreement as a condition of providing services to BGV, for which he would be paid according to the terms contained in the Agreement. *See Id.,* Ex. A at 1. By signing the Agreement, Mr. Meyer acknowledged his receipt and acceptance of the terms and conditions of the Agreement. *Id*. Moreover, in Colorado, a mutual agreement to arbitrate claims and disputes, alone, constitutes valid consideration. *See e.g., Judd v. KeyPoint Gov't Sols., Inc.*, 2018 WL 3526222, at *4 (D. Colo. July 23, 2018), report and recommendation adopted, No. 18-CV-00327-RM-STV, 2018 WL 6603888 (D. Colo. Dec. 4, 2018) (holding that mutual promises to be bound by the terms of independent contractor agreement was valid consideration); *Crawford v. United Servs. Auto. Ass'n Ins.*, No. 06-CV-00380-EWN-BNB, 2006 WL 8460352, at *6 (D. Colo. July 10, 2006) ("One party's agreement to arbitrate is adequate consideration for the other party's agreement to arbitrate."); *Hickerson v. Pool Corp.*, No. 19-CV-02229-CMA-STV, 2020 WL 5016938, at *7 (D. Colo. Aug. 25, 2020) ("a mutual promise to arbitrate itself constitute sufficient consideration for an arbitration agreement); *Nowak v. Volt Mgmt. Corp.*, No. CIV.A. 09-CV-00401-W, 2009 WL 1392084, at *3 (D. Colo. May 15, 2009) (same).

### c. The timing of Mr. Meyer's signature does not affect enforceability of the Agreement.

The fact that Mr. Meyer signed the Agreement after Art McMahon filed this lawsuit does not change the enforceability of the Agreement. While BGV rejects Mr. Meyer's assertion that he was misclassified as an Independent Contractor and that the FLSA applies to this action, even in FLSA collective actions, federal district courts, including the

District of Colorado, have compelled arbitration of claims asserted by opt-in plaintiffs who signed arbitration agreements after the initiation of a collective action and before they opted-in to the collective action. *See Levine v. Vitamin Cottage Nat. Foods Mkts.,* No. 20-cv-00261-STV, 2021 BL 368353, at *25 (D. Colo. Sept. 27, 2021) (compelling arbitration for 16 opt-in plaintiffs who signed arbitration agreements one to 12 months after the named plaintiff filed a collective action complaint); *Magee v. Francesca's Holding Corp.,* No. 17-565 (RBK/JS), ), 2020 WL 3169518, at *11 (D.N.J. June 14, 2020) (granting motion to compel arbitration for 151 opt-in plaintiffs who signed arbitration agreements after commencement of a FLSA collective action).

Indeed, "[a] defendant employer may communicate with prospective plaintiff employees who have not yet 'opted in,' unless the communication undermines or contradicts the Court's own notice to prospective plaintiffs." *Id.* at *10 *(quoting Jones v. Judge Tech. Servs. Inc.,* Civ. No. 11-6910, 2014 WL 3887733, at *7 (E.D. Pa. Aug. 7, 2014); *Parks v. Eastwood Ins. Servs. Inc.*, 235 F. Supp.2d 1082 (C.D. Cal. 2002). Such permissive communications, of course, includes presentation of arbitration agreements, particularly when, as here, BGV did not resort to inappropriate, misleading or confusing measures in presenting Mr. Meyer with the Agreement, let alone any communication that could have even arguably undermined the notice approved by the Court.  In fact, the Notice was neither approved, nor sent to Mr. Meyer until almost ***a year and half after*** he entered into the Agreement with BGV.

Accordingly, Mr. Meyer's mutual agreement to exclusively submit his claims to binding and final arbitration is valid and enforceable under state and federal law.

### B. The Court Should Dismiss Mr. Meyer's Claims in this Action in Favor of Arbitration.

Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The Act leaves no discretion to a court in determining whether to require arbitration; rather, the Act mandates that the court shall direct parties to proceed to arbitration on issues with respect to which an arbitration agreement exists. 9 U.S.C. §§ 3, 4; *Dean Witter Reynolds*, 470 U.S. at 218 (valid agreements to arbitrate must be enforced); *JaJack*, 2020 WL 8269316, at *4 ("dismissal under Rule 12(b)(1) is appropriate if there is a valid and enforceable arbitration clause") (citation omitted); *Encore Prods.*, 53 F. Supp. 2d at 1111 (dismissing claims under Fed. R. Civ. P. 12(b)(1) because there was a valid, enforceable arbitration clause) (citations omitted); *Crawford*, 2006 WL 8460352, at *12 (dismissal under the FAA appropriate where all of plaintiff's claims must be arbitrated) (citations omitted).

Accordingly, BGV respectfully requests that the Court dismiss without prejudice the claims of Mr. Meyer and compel him to pursue his claims individually in binding arbitration.

### IV. CONCLUSION

Mr. Meyer entered into a valid and enforceable agreement to exclusively submit all of his claims that he now seeks to assert in this action to mandatory and binding arbitration. As such, Mr. Meyer should be compelled to arbitrate all of his claims and those claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). Furthermore, Mr.

Meyer should also be ordered to pay BGV's attorneys' fees and costs for having to brief this matter unnecessarily, and the Court should order all other and further relief to which the Court deems appropriate to award BGV.

Dated April 1, 2022

*/s/ Danielle S. Urban*
Danielle S. Urban
Richard A. Millisor
Patrick J. Collopy
FISHER & PHILLIPS LLP
1125 17th Street, Suite 2400
Denver, CO  80202
Telephone:  (303) 218-3650
Facsimile:   (303) 218-3651
durban@fisherphillips.com
rmillisor@fisherphillips.com
pcollopy@fisherphillips.com

*Attorneys for Defendant Breckenridge Grand Vacations, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

>Steven L. Woodrow
>Patrick H. Peluso
>Taylor T. Smith
>Woodrow & Peluso, LLC
>3900 East Mexico Avenue
>Suite 300
>Denver, CO  80210
>swoodrow@woodrowpeluso.com
>ppeluso@woodrowpeluso.com
>tsmith@woodrowpeluso.com

>/s/ Danielle S. Urban
>Danielle S. Urban
>For FISHER & PHILLIPS LLP

FP 43625388.1